NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

UNIFEMME, INC., Respondent.

No. 76–2098.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 31, 1977.

Decided Jan. 11, 1978.

---

Mary Schuette, Atty., N. L. R. B., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, W. Brown, Jr., N. L. R. B., Washington, D. C., on brief, for petitioner.

Michael J. Bobroff, St. Louis, Mo., Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., on brief, for respondent.

Before ROSS, STEPHENSON and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This case is before us on application for enforcement of an order of the National Labor Relations Board (Board). The order found that respondent, Unifemme, Inc., violated § 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151, et seq., by refusing to bargain with the duly certified representative of Unifemme's employees. The Board's findings were based in part on a prior representation proceeding under § 9 of the National Labor Relations Act.

In May, 1975 Amalgamated Clothing Workers Union (Amalgamated) filed a representation petition with the Board. Following negotiations between Amalgamated and Unifemme, the two parties entered into an election agreement entitled Stipulation for Certification Upon Consent Election. As a result of the negotiations, Unifemme's shipping employees were included as part of the bargaining unit, along with the production and maintenance employees. The election agreement was executed on June 19, 1975.

On June 24, 1975 the Garment Worker's Union (Union) filed a motion to intervene in the election. The motion was granted even though the intervention was opposed by Amalgamated. In its motion in opposition to the motion to intervene, Amalgamated alleged that Union's intervention was both untimely and fraudulent. The Board's procedure permits intervention by a second union in a consent election proceeding only if such union demonstrates a showing of interest (usually a signed authorization card) which predates the approval of the election agreement. Amalgamated, in its motion in opposition to Union's intervention, alleged that five days after an authorization card was rejected because it did not predate the election agreement, another card, signed by the same employee but bearing a date prior to the election agreement, was accepted by the Regional Office. On the basis of this second card the Regional Director granted Union's motion to intervene. The Board neither confirms nor denies the allegation that the same employee signed both cards, but does admit that two cards were filed, and that the first to be filed was untimely and thus rejected. After notice of the intervention by Union was given to Unifemme, Unifemme sought to withdraw from the election agreement. In a letter to the Regional Director dated July 16, 1975, attorneys for Unifemme pointed out that the intervention of Union into the election created serious problems with regard to the bargaining unit issue and that had Unifemme known that Union was to be a party to the election, it would not have signed the election agreement. Unifemme pointed out that § 11098.1d of the Board's Field Manual contemplates situations where the employer may wish to withdraw from an election agreement because of changed circumstances. Further, Unifemme proposed to meet with Union and Amalgamated for the purpose of attempting to enter into an election agreement with both unions, after bargaining unit issues had been resolved.[1] Unifemme's request to with-

---

1. Unifemme suggests that Union, unlike Amalgamated, had a practice of stopping shipments during labor disputes. For this reason, the agreement between Unifemme and Amalga-

draw from the election was received by the Regional Director on July 18, 1975. On the same day the request was denied by the Director who wrote in part: "After careful review of this matter, I conclude that no good cause has been shown why I should withdraw my approval of the election agreement."

Less than twenty-four hours prior to the election Union representatives made statements to some of Unifemme's employees concerning the wages of Union members at Nelly Don, a nearby plant. While the statements were not completely substantiated by the records of Nelly Don, the Regional Director found that any departures from the truth were merely exaggerations that are expected and tolerated in any election.

The election was held on August 1, 1975, and Union received a majority of the votes. Unifemme formally objected to the conduct of the election in a petition filed with the Board on August 5, 1975. In its petition Unifemme alleged that Union should not have been allowed to intervene, that the Board's refusal to grant Unifemme's request to withdraw from the election agreement was improper, and that the election was invalid due to substantial misrepresentations made by Union concerning wages and benefits of Union workers at a nearby plant, less than twenty-four hours prior to the election. In March, 1976, without a hearing, the Board adopted the Regional Director's finding that Unifemme's objections to the election should be overruled, and certified Union as the exclusive bargaining representative of Unifemme's employees.

In April, 1976 Unifemme rejected Union's request to bargain, and Union filed an unfair labor practice charge. Unifemme, in response to a complaint, admitted that it had refused to bargain but denied the validity of the Board's certification of Union. In response to a notice to show cause why summary judgment should not be granted, Unifemme relied on its position challenging the validity of the election and the resulting certification of Union as bargaining representative.

In October, 1976 the Board found Unifemme to be in violation of § 8(a)(5) and (1), noting that all of the issues raised by Unifemme in the unfair labor practice proceeding were, or could have been, litigated in the representation proceeding, and that Unifemme did not offer any new evidence to require reexamination of the certification of Union as the bargaining representative of Unifemme's employees. The Board issued an order requiring that Unifemme bargain with Union and post appropriate notices. At no time was Unifemme given a hearing on the factual issues before either the Regional Director or the Board.

Before us, Unifemme asserts four grounds in support of its refusal to bargain with Union. First, Unifemme argues that the Regional Director abused his discretion by permitting Union to intervene in the election. Second, Unifemme argues that the Regional Director abused his discretion by refusing to permit Unifemme to withdraw from the election agreement after intervention by Union. Third, Unifemme argues that the Board's certification of Union as the bargaining representative is invalid because of Union misrepresentations concerning wages and benefits made less than twenty-four hours prior to the election and because of the Board's failure to direct that a hearing be held concerning the misrepresentations. Fourth, Unifemme argues that the Board improperly refused to reexamine the representation issue during the unfair labor practice proceeding.

Since we find that the Regional Director abused his discretion by refusing to permit Unifemme to withdraw from the election agreement after Union was allowed to intervene, we find it unnecessary to address the other issues raised by Unifemme.

mated that shipping employees would be included in the bargaining unit was no longer acceptable to Unifemme because of the intervention of Union after the bargaining unit issue had been settled between Unifemme and Amalgamated.

The Board argues that Unifemme never substantiated the assertions, made in its July 16, 1975 request to withdraw, by informing the Regional Director what understandings or agreements it had with Amalgamated. Also, the Regional Director noted that Unifemme could have communicated any information concerning such matters to the Union in the interval between its intervention and the date of the election. Further, the Regional Director stated that Unifemme's interests were not prejudiced by the intervention of Union, since Union was limited to participation in the election under the terms agreed upon by Unifemme and Amalgamated.

We find these arguments unpersuasive. First, even though the record does not indicate whether the Regional Director was aware of Unifemme's contention concerning Union's practice of stopping deliveries during labor disputes, the letter of July 16, 1975 requesting withdrawal did indicate that agreements concerning the inclusion or exclusion of certain persons in the bargaining unit made with Amalgamated would not have been made had Union been a party to the agreements. Second, we do not see how communication of the terms of the agreement between Unifemme and Amalgamated to Union would have altered the situation in any way. There is no doubt that Union was aware of the terms of the agreement prior to its intervention. The Regional Director failed to address the real issue in this case when he noted that Union was bound by the terms agreed upon by Unifemme and Amalgamated. It is for this very reason that Unifemme sought to withdraw from the election agreement. The point is that the agreement may not have been entered into in its present form or may not have been negotiated at all had Union been a party to the proceeding at the time of the execution of the agreement. To allow Union to intervene after the scope of the bargaining unit had been determined between other parties created changed circumstances and parties sufficient to require that Unifemme be allowed to withdraw from the election agreement.

The rules and regulations of the Board contain no provisions relating to withdrawal from election agreements. *See* 29 C.F.R. §§ 100.735–1—100.735–47 (1976). However, the National Labor Relations Board Field Manual, § 11098.1d contemplates withdrawal of an employer from an election agreement upon a showing of good cause.[2] Unifemme's request to withdraw from the election was timely made, and included a clear statement of the changed circumstances giving rise to Unifemme's request to withdraw. A careful examination of the record shows that Unifemme was at no time given a hearing on the withdrawal issue and raises a question as to whether Unifemme's position was given any more than token consideration by the Regional Director.

In *Buffalo Arms, Inc. v. NLRB*, 224 F.2d 105 (2d Cir. 1955), two unions and a company were parties to a consent election agreement. The agreement contained a provision stating that the Regional Director's determinations would be final and binding. Prior to the election, one of the unions was permitted to withdraw. The company protested, objecting to the substantial change in the agreed terms and conditions of the election caused by the withdrawal. The election was held in spite of the company's objection, and the remaining union was certified as the bargaining representative of the company employees. After a request by the company for reconsideration, however, the Regional Director set aside the election. The union filed exceptions to the Regional Director's decision, and the National Labor Relations Board sustained the union's exceptions, directing that the election not be set aside. The Court of Appeals for the Second Circuit held that the Regional Director's report setting aside the election was a final and conclusive determination which the Board should not have overruled, based on the agreement of the parties that the rulings of the Regional Director would be final. In dicta, Judge

**2.** The NLRB Field Manual does not contain binding procedural rules. It is intended to provide procedural and operational guidance to the NLRB staff.

Swan[3] went on to address the merits of the withdrawal issue, stating:

If one party to a three-party stipulation for a consent election withdraws, I believe that a new agreement must be signed by the other two before a valid consent election can be held. This was the view taken by the Regional Director in his Supplemental Report of February 8, 1954. I think he was right. Buffalo might well have thought neither union would win if both appeared on the ballot. This had happened a year before in the September 17, 1952 election, and the run-off election of September 29th. With this recent election history in mind it may well be doubted whether the employer would have stipulated with the Steelworkers union alone for the consent election in November 1953. The Board's ruling treats the employer as if it had made a stipulation it never did make. 224 F.2d at 108.

The dicta in *Buffalo Arms* are directly applicable to the facts of the present case.[4] Cogent reasoning requires that the parties enter into a new election agreement, since a non-party to the agreement has been allowed to participate in the election under the terms agreed upon by the other two parties. This can present a more serious problem than withdrawal of one of the parties to an agreement, since the non-party intervenor is allowed to benefit from the agreement as if it had been a party, and the agreement is stretched to cover a situation and a party which it clearly was not meant to cover. As indicated, allowing Union to intervene gave Union the benefit of agreements made between Unifemme and Amalgamated with regard to the bargaining unit which may not have been made had Union been a party to the election agreement.

Certainly in the present case, the rulings of the Regional Director and the Board "treats the employer as if it had made a stipulation it never did make." 224 F.2d at 108.

The Regional Director should have allowed Unifemme to withdraw, leaving Unifemme and both unions free to execute a new election agreement. If a new agreement could not be reached between the parties, the two unions would have been free to utilize the customary methods of bringing about an election in the absence of a consent agreement. *See* 29 C.F.R. §§ 101.17—101.21 (1976).

We note that this is not a case of a party wishing to withdraw from an election agreement based on whim or a fickle change of mind. Unifemme had not been unreasonable in its dealings with the Board and Amalgamated. Unifemme had voluntarily and promptly agreed to an election upon the filing of a petition by Amalgamated, and in its letter to the Regional Director requesting withdrawal had offered to meet with both unions for the purpose of drawing up a new election agreement. Such action on the part of employers should be encouraged. For us to find that an employer who signs a consent election agreement will be bound by that agreement in spite of the entry into the election of an additional party, causing changed circumstances to the detriment of the employer, could cause employers to refuse to enter into such agreements, or to insist on terms which are not required between the parties at the time but which could be necessary to protect the employer's interests should intervention be allowed after the execution of the agreement. Such conditions would militate against speedy and congenial resolution of representation issues, and could detrimentally affect the bargaining ability of those

---

**3.** Honorable Thomas W. Swan, United States Senior Circuit Judge for the Second Circuit.

**4.** In the present case, the election agreement entered into by Unifemme and Amalgamated did not contain a clause providing that the Regional Director's determinations would be final. Unifemme specifically rejected the Board's election agreement form which contains a provision giving the Regional Director authority to make final and binding decisions. *See* 29 C.F.R. § 101.19 (1976) for a discussion of the two types of informal consent procedures through which representation issues may be resolved.

unions which have developed good working relationships with employers and who have a past history of acting responsibly during labor disputes.

Accordingly, we deny the National Labor Relations Board's application for enforcement of its order and vacate the election held on August 1, 1975.