# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-2471
No. 03-2764

———————

| | | |
|---|---|---|
| National Labor Relations Board, | * | |
| | * | |
| Petitioner/Cross Respondent, | * | |
| | * | Petitions for Review or Enforcement |
| v. | * | of an Order of the National |
| | * | Labor Relations Board. |
| MEMC Electronic Materials, Inc., | * | |
| | * | |
| Respondent/Cross Petitioner. | * | |

———————

Submitted:  November 17, 2003

Filed:  April 9, 2004

———————

Before LOKEN, Chief Judge, McMILLIAN and BEAM, Circuit Judges.

———————

LOKEN, Chief Judge.

The International Association of Machinists and Aerospace Workers (the IAM) petitioned the National Labor Relations Board to represent the maintenance workers employed by MEMC Electronic Materials, Inc. (MEMC), at its silicon wafer manufacturing plant in St. Peter's, Missouri.  MEMC and the IAM then entered into a Stipulated Election Agreement (the Agreement) defining the collective-bargaining unit as consisting of MEMC's maintenance employees and excluding all other employees.  Less than one week before the election, the IAM filed a second petition to represent MEMC's production employees.  MEMC moved to withdraw from the

Agreement and postpone the scheduled election, arguing that the proper bargaining unit included all production and maintenance employees.

After the Board's Regional Director denied MEMC's motion to withdraw, the IAM prevailed in the election and the Board certified the IAM as the maintenance employees' exclusive collective bargaining representative. When MEMC refused to bargain, the Board commenced an unfair labor practice proceeding and ruled that MEMC had violated 29 U.S.C. §§ 158(a)(1) and (5) by refusing to bargain. The Board ordered MEMC to bargain with the IAM as the exclusive representative of the maintenance employees. MEMC Elec. Materials, Inc., 338 N.L.R.B. No. 142 (Apr. 10, 2003). The Board now petitions to enforce its unfair labor practice order. MEMC cross-petitions for review of that order, which is the proper way to obtain judicial review of the underlying order certifying the IAM. See NLRB v. Superior of Mo., Inc., 351 F.3d 805, 806 (8th Cir. 2003). We conclude that the Board did not abuse its discretion in denying MEMC's motion to withdraw and in refusing to set aside the election. Accordingly, we enforce the Board's order.

**I.**

When a union or group of employees petitions for certification as an exclusive bargaining representative, the Board must determine the appropriate collective bargaining unit to be represented. See 29 U.S.C. § 159(b). The Board has broad discretion to determine whether a group of employees has a sufficient "community of interest" to be an appropriate bargaining unit. NLRB v. Action Auto., Inc., 469 U.S. 490, 494 (1985); NLRB v. Catalytic Indus. Maint. Co., 964 F.2d 513, 518 (5th Cir. 1992). That includes the discretion to define multiple bargaining units for an employer's single facility. See, e.g., Am. Hosp. Ass'n v. NLRB, 499 U.S. 606 (1991); Barnert Mem'l Hosp. Ctr., 217 N.L.R.B. 775, 776-77 (1975).

The Board applies a different standard, however, when the employer and the petitioning employees enter into a consent agreement or stipulation that defines the appropriate bargaining unit for purposes of the impending representation election. The statute authorizes the Board to approve such agreements. See 29 U.S.C. § 159(c)(4). The Board's regulations authorize election agreements, subject to the approval of the regional director, and provide that such agreements "shall include a description of the appropriate unit." 29 C.F.R. § 102.62(a). When the parties have agreed to an appropriate bargaining unit in an election agreement, the Board will approve that agreement unless it determines that the bargaining unit contravenes the National Labor Relations Act or Board policy. This standard has been upheld -- indeed, mandated -- in numerous circuit court decisions. See, e.g., NLRB v. Mike O'Connor Chevrolet-Buick-GMC Co., 512 F.2d 684, 687 (8th Cir. 1975); NLRB v. J.J. Collins' Sons, Inc., 332 F.2d 523, 525 (7th Cir. 1964).

This appeal raises the related question of when the Board should permit a party to an approved election agreement to withdraw from that agreement. In denying MEMC's motion to withdraw, the Board relied on its well-established rule that a party may withdraw from an approved election agreement only upon a showing of "unusual circumstances." See Hampton Inn & Suites, 331 N.L.R.B. 238 (2000). Under this standard, it is not enough to show that, absent the election agreement, the Board would have defined the appropriate bargaining unit differently. See Micro Pac. Dev. Inc. v. NLRB, 178 F.3d 1325, 1335 (D.C. Cir. 1999). Applying this standard, the Regional Director concluded there was no showing of unusual circumstances because, "if, as [MEMC] stipulated in the election agreement, the maintenance employees constitute an appropriate unit, the appropriateness of that unit is not defeated because the [IAM] seeks [to represent] another unit of [MEMC's] employees." We review this ruling for abuse of the Board's discretion. See NLRB v. Unifemme, Inc., 570 F.2d 230, 232 (8th Cir. 1978) (standard of review).

MEMC argues that the Board's denial of the motion to withdraw is contrary to our decision in Unifemme. The Board responds that it properly relied on Hampton Inn in denying the motion to withdraw. Because we must follow our own precedents if they conflict with the Board's, we must examine the facts in those two cases.[1]

In Unifemme, an employer and a union entered into an election agreement defining the appropriate bargaining unit. After the regional director approved the agreement, a second union filed a motion to intervene in the election, a procedure authorized by the Board's regulations. See 29 C.F.R. § 102.65(b). The Board granted the motion to intervene. The employer then moved to withdraw from the election agreement, stating that it wished to contest the proposed unit if the second union would participate in the election. The regional director denied the motion to withdraw, the second union won the election, and the Board entered an unfair labor practice order when the employer refused to bargain. We denied the Board's petition to enforce its order, concluding that the Board should have granted the motion to withdraw because allowing the second union "to intervene after the scope of the bargaining unit had been determined between other parties created changed circumstances and parties sufficient to require that Unifemme be allowed to withdraw." Unifemme, 570 F.2d at 233.

In Hampton Inn, on the day the regional director approved an election agreement defining an appropriate bargaining unit, the union filed a second petition to represent a second group of employees. The employer moved to withdraw from the agreement, arguing, as MEMC does in this case, that only a single unit was

---

[1]In Hampton Inn, the Board cited its decision in Unifemme, 226 N.L.R.B. 607 (1976), without noting that we refused to enforce that decision. Similarly, neither the Regional Director nor the Board cited our decision in Unifemme in deciding this case. These omissions may be the Board's way of signaling its non-acquiescence in our Unifemme decision. But Unifemme is governing law in this circuit until it is overruled by this court en banc or by the Supreme Court, or until the Board adopts an entirely different approach to these consent election issues.

appropriate. The Board denied the motion to withdraw in a three-to-two decision. The majority, emphasizing that "election agreements are contracts, binding on the parties who execute them," concluded that the employer failed to show "unusual circumstances" because it had been free to negotiate unit issues and the union was not required "to identify its organizing plans or forfeit an executed stipulated election agreement." Hampton Inn, 331 N.L.R.B. at 238. The dissent, on the other hand, concluded that the Board should not "permit the contract to stand where, as here, a material fact has been withheld by one party and not known by the other party, to the detriment of the latter party." Id. at 239.

In seeking to reconcile these two decisions, we are troubled by the open-ended nature of the Board's "unusual circumstances" standard because the agency has never explained what factors may make a circumstance "unusual." When asked to approve election agreements, the Board's long-standing approach has been to honor the parties' freedom of contract, unless their contract is contrary to the statute or Board policy. See Semi-Steel Casting Co. v. NLRB, 160 F.2d 388, 391 (8th Cir. 1947). That is a sensible policy. Defining the bargaining unit is a step in the process leading to a collective bargaining agreement (should the union prevail in the election). If the parties can agree on the employees to be represented by the union, that helps establish a favorable environment for the more difficult contract negotiations that may lie ahead. Thus, the Board majority in Hampton Inn was on sound ground in emphasizing that parties are bound by an approved election agreement, just as they are bound by other contracts.

Focusing on the contractual underpinnings of the issue places the Board's unusual circumstances standard in a relevant context. A motion to withdraw from an approved election agreement is analogous to a lawsuit seeking to rescind an executory contract. Because the law favors the enforcement of contracts, a right to rescind arises only in circumstances that may fairly be described as "unusual." But the law of contracts has developed over a long period of time well-known standards for

deciding when a party should be permitted to rescind an otherwise binding contract. For example, fraud in the inducement, duress, lack of capacity, and mutual mistake warrant rescission; one party's unilateral mistake does not. See RESTATEMENT (SECOND) OF CONTRACTS § 7 cmt. b (1981). Given the Board's overall deference to election agreements, we conclude that we should look to contract law rescission principles in reviewing the Board's denial of a motion to withdraw on the ground that no unusual circumstances have been shown. If the Board's ruling is consistent with these principles, there has been no abuse of discretion. But if the moving party established a right to rescind under contract law, then we must examine whether the Board had good reason to rule otherwise.

Viewed from this perspective, both Unifemme and Hampton Inn were correctly decided. In Unifemme, when the Board granted the second union's motion to intervene, it fundamentally altered the election agreement. In contract terms, Unifemme and the first union had not mutually assented to the agreement as modified by the second union's intervention. Stated somewhat differently, denial of the motion to withdraw was the equivalent of enforcing a contract modification to which Unifemme did not agree. Or as our opinion phrased it, the Board abused its discretion when it "stretched [the agreement] to cover a situation and a party which it clearly was not meant to cover." Unifemme, 570 F.2d at 233-34. In contract law terms, this was clearly an unusual circumstance. On the other hand, in Hampton Inn, the Board did not unilaterally modify the election agreement, nor did the parties enter into the agreement by mutual mistake. True, the employer labored under a unilateral mistake as to the union's intentions. But such a mistake does not justify rescission unless the other party was guilty of fraud in the inducement. The union had made no affirmative misrepresentation, so the case turned on whether the union had a duty to disclose its organizing strategy. As the Board majority recognized, absent a fiduciary relationship, one party to arms-length contract bargaining has no such duty to disclose. So the employer was not entitled to rescind as a matter of contract law, and the Board was on sound ground in denying the employer's motion to withdraw.

-6-

This case is similar to <u>Hampton Inn</u>, not <u>Unifemme</u>. The IAM's second petition did not modify the Agreement. The scope of that Agreement was limited to an election by MEMC's maintenance workers -- the election that in fact occurred. There obviously was no mutual mistake, and MEMC does not allege affirmative misrepresentations by the IAM amounting to fraud in the inducement of the Agreement. MEMC argues that it should be allowed to withdraw from the Agreement because, "[h]ad MEMC known of the [IAM's] secret intent it would have never entered into the stipulation in the first instance." But as in <u>Hampton Inn</u>, the IAM had no duty to disclose its organizing strategy when negotiating the Agreement. MEMC could have pressed for terms that would have limited the IAM's organizing options, such as a provision barring the filing of a second petition during the first election period. MEMC failed to do so. In these circumstances, we conclude that MEMC did not establish grounds to rescind the Agreement, and therefore the Board did not abuse its discretion in denying the motion to withdraw.

## II.

At the close of the election, the Regional Director denied MEMC's pending motion to postpone the election and advised that MEMC would have fourteen days to appeal that ruling to the Board. The next day, the Regional Director announced that the ballots would be promptly counted. MEMC objected to the election on this ground. In its final decision rejecting all objections, upholding the Regional Director's substantive rulings, and certifying the IAM, the Board stated: "it would have been preferable for the Region to have held the ballot count in abeyance while the Board considered the Employer's appeals. However . . . the Regional Director's prematurely opening and counting the challenged ballots constitutes harmless error."

On appeal, MEMC argues that the Regional Director violated a Board regulation by counting rather than impounding ballots "whose validity might be affected by the final Board decision" on a pending request for review. 29 C.F.R.

§ 102.67(b). MEMC contends that this deviation from the Board's mandatory election procedures requires that the election be set aside, regardless of whether that error affected the results of the election. We disagree.

"Representation elections are not to be set aside lightly." Millard Processing Servs., Inc. v. NLRB, 2 F.3d 258, 261 (8th Cir. 1993), cert. denied, 510 U.S. 1092 (1994). Here, if the Regional Director prematurely counted the ballots after the election ended, that error did not disenfranchise any voters, did not destroy the "laboratory conditions" essential for a fair election, and did not reflect improper bias or compromise the neutrality of the election procedures. See generally Superior of Mo., 351 F.3d at 808-09. Though the ballots were counted before the Board ruled on MEMC's election objections, the Board often knows the outcome of an election at the time it resolves election disputes. In these circumstances, the Board did not abuse its "wide degree of discretion . . . regarding representation matters" in ruling that the failure to impound the ballots was a harmless error that did not warrant setting aside the election. Millard, 2 F.3d at 261 (quotations omitted).

For the foregoing reasons, we grant the Board's petition to enforce its Decision and Order dated April 10, 2003, and deny MEMC's cross petition for review.

_____