**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1203**

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

NATIONAL NURSES ORGANIZING COMMITTEE,

Intervenor,

v.

BLUEFIELD HOSPITAL CO., LLC, d/b/a Bluefield Regional Medical Center; GREENBRIER VMC, d/b/a Greenbrier Valley Medical Center,

Respondents.

On Application for Enforcement of an Order of the National Labor Relations Board. (10-CA-093042)

Argued: January 26, 2016                    Decided: May 6, 2016

Before AGEE and THACKER, Circuit Judges, and Henry E. HUDSON, United States District Judge for the Eastern District of Virginia, sitting by designation.

Application for enforcement granted by published opinion. Judge Agee wrote the opinion, in which Judge Thacker and Judge Hudson joined.

**ARGUED:** Micah Prieb Stoltzfus Jost, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Petitioner. Kaitlin Ann Kaseta, Charleston, South Carolina, for Respondents. **ON BRIEF:** Jill

Ann Griffin, Supervisory Attorney, Richard F. Griffin, Jr., General Counsel, Jennifer Abruzzo, Deputy General Counsel, John H. Ferguson, Associate General Counsel, Linda Dreeben, Deputy Associate General Counsel, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Petitioner. Bryan T. Carmody, CARMODY & CARMODY LLP, Glastonbury, Connecticut, for Respondents.

---

AGEE, Circuit Judge:

This case involves a labor dispute between two West Virginia hospitals, Bluefield Regional Medical Center and Greenbrier Valley Medical Center (collectively, the "Hospitals"), and a group of their employees. After registered nurses employed at the Hospitals elected the National Nurses Organizing Committee (the "Union") as their bargaining representative, the Hospitals challenged the election results and refused the Union's requests to bargain. The National Labor Relations Board (the "Board") issued a final decision concluding the Hospitals violated the National Labor Relations Act (the "Act"), 29 U.S.C. § 151 et seq., by refusing to bargain with the Union. The Board then brought an application for enforcement before this Court, which the Hospitals oppose. For the reasons set forth below, we grant the Board's application for enforcement.

I.

A.

To place the issues in context, we briefly explain some of the Board's functions and the authority the Act grants the Board. As a quasi-judicial body, the Board is responsible for determining whether certain conduct constitutes an unfair labor practice in violation of the Act. 29 U.S.C. §§ 158, 160. In

3

addition, the Board has principal authority to conduct representation proceedings, in which employees may select a collective bargaining representative. Id. § 159(b), (c). The Act expressly permits the Board to delegate to its Regional Directors authority to oversee representation elections and to certify election results. Id. § 153(b). The Board delegated that general authority to its Regional Directors in 1961, and they have been administering and certifying results of representation elections since that time. 26 Fed. Reg. 3911 (May 4, 1961).

Although the Regional Directors have delegated authority to oversee representation elections, the Board retains plenary authority to "review any action of a regional director" at the objection of an interested person. 29 U.S.C. § 153(b). However, the parties may waive that right and agree to give the Regional Director's decision finality. See 29 C.F.R. § 102.62.[1] In the absence of such an agreement, a Regional Director's actions only become final if the parties decline to seek Board review or if the Board, upon review, does not alter the Regional Director's decision. 29 U.S.C. § 153(b).[2]

---

[1] Unless otherwise indicated, all citations to the Code of Federal Regulations are to the version in effect at the time the described events took place.

[2] Parties, upon mutual consent, may give up their right to plenary Board review by entering into one of several standard (Continued)

Section 3(a) of the Act requires that the Board be composed of five members appointed by the President upon advice and consent of the Senate. Id. § 153(a). "[T]hree members of the Board shall, at all times, constitute a quorum of the Board[.]" Id. § 153(b).

The Act permits the Board to delegate "any or all of the powers which it may itself exercise" to panels made up of three or more of its members, with two panel members constituting a panel quorum. Id. § 153(b). This delegation of cases across various panels is intended to allow the Board to process labor disputes more efficiently. The panel delegation survives the expiration of up to two of the five Board members' terms, such that the Board may continue to adjudicate unfair labor practice disputes pending appointment of new members so long as the three-member Board quorum requirement is met. Id. § 153(b).

election agreements. See 29 C.F.R. § 102.62. The parties in this case chose to enter into a "[c]onsent election agreement with final regional director determinations of post-election disputes," meaning that the rulings and determinations of the Regional Director with respect to a union election "shall be final . . . with the same force and effect, in that case, as if issued by the Board." Id. § 102.62(a); see also J.A. 15-20. Distinct from a consent election agreement is a stipulated election agreement, which provides that the representation "election shall be conducted under the direction and supervision of the regional director," but retains "Board review of the regional director's resolution of post-election disputes." 29 C.F.R. § 102.62(b).

5

As of January 3, 2012, the terms of three of the Board's five members had expired. Asserting authority under the Recess Appointments Clause, U.S. Const. art. II, § 2, cl. 3, the President appointed three persons to the Board to fill these vacancies on January 4, 2012, during a brief recess between the Senate's twice-weekly pro forma sessions. In NLRB v. Noel Canning, 134 S. Ct. 2550 (2014), the Supreme Court held those appointments unconstitutional as not within the President's powers. Id. at 2578. These Board seats remained vacant until August 5, 2013 when the Senate confirmed new Board members for the seats. By reason of the three vacancies, the Board was composed of only two members from January 3, 2012 through August 5, 2013 and thus lacked a quorum as required by the Act. During this period, Regional Directors continued to oversee representation elections and certify election results pursuant to the 1961 delegation of authority from the Board.

## B.

The Hospitals provide inpatient and outpatient care in Bluefield and Ronceverte, West Virginia. In August 2012, while the Board lacked a quorum, the Union filed two petitions with the Board seeking to become the bargaining entity for registered

nurses at the Hospitals.[3]  The Hospitals and the Union entered into Consent Election Agreements (the "Agreements") that, among other things, identified the proposed bargaining unit and provided that the Regional Director, Claude Harrell, would oversee secret-ballot elections in accordance with the Board's regulations.[4]  Under the Agreements and corresponding regulations, the parties were required to file objections to the results of the elections with the Regional Director no later than seven days after the ballots were tallied.  The Agreements specified that "[t]he method of investigation of objections and challenge[s], including whether to hold a hearing, shall be determined by the Regional Director, whose decision shall be final."  J.A. 314.  The Regional Director also retained the authority to certify the Union as the representative of the Hospitals' registered nurses, pending the outcome of the elections.

The Regional Director held a representation election at each hospital on August 29 and 30, 2012, and the Union prevailed in both elections.  In response, the Hospitals filed several

---

[3] It is undisputed that the Hospitals are "employer[s]" engaged in "commerce," and the Union qualifies as a "labor organization," under the definitional provisions of the Act.  29 U.S.C. § 152(2), (5), (6), (7).

[4] The Agreements waived the Hospitals' right to pre-election hearings, which are otherwise mandatory.  See 29 U.S.C. § 159(c)(1).

7

objections to the election results. The Regional Director issued notices of hearings for the objections and gave written notification to the Hospitals that the Board's rules and regulations required the Hospitals to submit evidence in support of their objections within specific time limits. See 29 C.F.R. § 102.69. The Hospitals did not produce any evidence in support of their objections, nor did they seek an extension of time to do so. On September 24, 2012, the Regional Director overruled the Hospitals' objections and withdrew the hearing notices, actions that amounted to final rulings on the objections under the Agreements. The Regional Director certified the Union as the registered nurses' collective bargaining representative the next day. See J.A. 38-41.

The Union then made several requests to bargain with the Hospitals on behalf of the registered nurses. The Hospitals refused to bargain, and the Union filed unfair labor practice charges with the Board. On November 29, 2012, the Regional Director issued a consolidated complaint on behalf of the Acting General Counsel of the Board, Lafe Solomon, which alleged that the Hospitals' refusal to bargain with the Union violated Sections 8(a)(1) and (5) of the Act. See 29 U.S.C. § 158(a)(1), (a)(5). The Hospitals answered by admitting their refusal to bargain, but claiming an oral agreement between the Union and the Hospitals required arbitration of election disputes and

8

precluded the Regional Director from overruling their election objections.[5]

While the unfair labor practice proceedings were ongoing, the United States Court of Appeals for the District of Columbia Circuit issued its decision in NLRB v. Noel Canning, 705 F.3d 490 (D.C. Cir. 2013), aff'd on other grounds, 134 S. Ct. 2550 (2014), holding that the President's recess appointment of the three Board members on January 4, 2012 was unlawful and that the Board as then constituted lacked a quorum. On February 8, 2013, the Hospitals filed an amended answer citing the Noel Canning decision and arguing under that case the actions of the Regional Director in certifying the Union were invalid because the certifications issued during the time in which the Board lacked a quorum. The Board's acting general counsel moved for summary judgment.

Upon confirmation of new members by the U.S. Senate, the Board regained a quorum on August 5, 2013. Almost a year later, the Supreme Court issued its decision in NLRB v. Noel Canning, 134 S. Ct. 2550 (2014), affirming, albeit on different grounds,

---

[5] During the unfair labor practice proceedings, the Hospitals submitted a sworn statement, stating the Hospitals and the Union agreed orally that the parties would submit election objections to the Board and an arbitrator concurrently, and that the agreement was reduced to writing in a document entitled "Election Procedure Agreement." However, no written agreement was offered to the Board or otherwise made a part of the record.

the District of Columbia Circuit's holding that the President's recess appointments were unconstitutional. The Hospitals then raised the Supreme Court's Noel Canning decision, along with various other affirmative defenses, in a third amended answer to the consolidated complaint, arguing specifically that the Regional Director lacked authority to approve the Agreements or issue the election certifications when the Board lacked a quorum. Tangentially, the Hospitals contended that the Regional Director's appointment was invalid because the Board's Acting General Counsel was not validly holding his position at the time he appointed the Regional Director.

On December 16, 2014, the Board granted summary judgment to the Acting General Counsel, finding that the Hospitals' refusal to bargain with the Union violated Sections 8(a)(1) and (5) of the Act. The Board found that the Hospitals waived Board review of the Regional Director's actions with respect to the election objections because the defense could have been raised during the representation phase and the Agreements stated that the Regional Director's actions would be final. Alternatively, the Board concluded the Regional Director had validly exercised authority over the representation proceedings under the longstanding delegation of such authority by the Board to its Regional Directors in 1961. The Board also concluded the Regional Director's appointment by the Acting General Counsel was valid.

10

Accordingly, the Board ordered the Hospitals to bargain with the Union, to implement any resulting understanding in a signed agreement, and to post a remedial notice.

The Board now brings an application for enforcement pursuant to 29 U.S.C. § 160(e). We have jurisdiction in this appeal under that statute.

II.

The Hospitals raise several arguments in opposition to the application for enforcement, which they contend require vacating the certificates of elections and remanding for new elections. Primarily, the Hospitals argue the Regional Director lacked authority to act during the period when the Board did not have a quorum thereby rendering his decisions on the elections invalid. The Hospitals also contend the Regional Director's appointment to that position occurred after the Board lost a quorum and is void, thus rendering invalid any actions he took including conducting and certifying the elections. Relatedly, the Hospitals argue the Regional Director's appointment was invalid because the Acting General Counsel had also lost authority to act at the time of his appointment. The Hospitals lastly posit that the Regional Director erred in requiring them to present evidence in support of their election objections because a separate contract with the Union precluded such a requirement.

11

For the reasons discussed below, we resolve each of these arguments in favor of the Board.

A.

As an initial matter, the Board contends that we need not reach any issue regarding the Board's lack of a quorum because the Hospitals waived that argument by failing to raise it during the representation proceedings and by entering into the Agreements. The District of Columbia Circuit recently rejected nearly identical waiver arguments from the Board in UC Health v. NLRB, 803 F.3d 669 (D.C. Cir. 2015). It held that UC Health had not waived its no-quorum challenge premised on Noel Canning because "challenges to the composition of an agency can be raised on review [by a Circuit Court] even when they are not raised before the agency." Id. at 672-73. In addition, it observed that holding that an election agreement foreclosed the no-quorum challenge would present a fairness problem:

> UC Health did not expressly give up the challenge it brings now when it executed the Agreement; it merely signed a form agreement providing that the Board's regulations would govern the election. Indeed, when UC Health entered the Stipulated Election Agreement, no one knew whether Congress might confirm the President's appointments and obviate the quorum issue by the time the representation election in this case took place. And for that matter, UC Health could not have known with any certainty that the Board had no quorum even without Senate approval for the President's appointments until the Supreme Court handed down its decision in Noel Canning fourteen

12

months after the election. We will not hold UC Health responsible for failing to see the future.

Id. at 673.

The reasoning in UC Health applies with equal force here, as the Hospitals raised a no-quorum argument before the Board and long before the enforcement application in this Court. This is not the circumstance where a party failed to pursue diligently a viable defense. The Hospitals promptly raised before the Board the Supreme Court's Noel Canning decision, handed down approximately 22 months after the representation elections took place, and we thus find no waiver.

B.

The Hospitals' main argument is that the authority of the Regional Director lapsed during any period in which the Board lacked a quorum. Citing to the Restatement (Third) of Agency, § 3.07(4) (Am. Law Inst. 2006), the Hospitals contend that once the principal (the Board) lost its authority, then its agent (the Regional Director) lost all delegated authority that derived from the principal: "an agent may carry out a delegated authority only so long as the entity that delegated the authority continues to hold the necessary authority of its own." Opening Br. 17. As a consequence, the Hospitals conclude the Agreements and certifications of elections issued by the

13

Regional Director "were void ab initio" because they occurred when the Board lacked a quorum.  Opening Br. 16.

The Board responds that the Supreme Court has implicitly rejected the Hospitals' underlying argument in New Process Steel, L.P. v. NLRB, 560 U.S. 674 (2010).  Further, the Board contends even if New Process Steel is not controlling, the Board's interpretation of the Act verifying the ongoing authority of Regional Directors is entitled to deference under Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).

We find the Hospitals' argument wanting in view of the Chevron deference owed the Board's interpretation of the Act regarding the authority of Regional Directors during the absence of a Board quorum.[6]  The Board has construed the Act as

---

[6] The Board correctly points out that the Supreme Court has, in dictum, implicitly acknowledged that delegation to Regional Directors survives the loss of a Board quorum in New Process Steel, L.P. v. NLRB, 560 U.S. 674 (2010).  The issue in that case was whether two Board members could continue to act on behalf of the Board after the Board itself lost a quorum.  Id. at 682-83.  While the Supreme Court made clear that the Board lost the authority to act, the Court also observed that its "conclusion that the delegee group ceases to exist once there are no longer three Board members to constitute the group does not cast doubt on the prior delegations of authority to nongroup members, such as, the regional directors or the general counsel."  Id. at 684 n.4.  We give great weight to Supreme Court dicta.  See McCravy v. Metro. Life Ins. Co., 690 F.3d 176, 182 n.2 (4th Cir. 2012) (assuming that the pertinent language is dictum, "we cannot simply override a legal pronouncement endorsed . . . by a majority of the Supreme Court."); United
(Continued)

14

authorizing Regional Directors to exercise delegated authority during a period in which the Board lacks a quorum. <u>Bluefield Hosp. Co.</u>, 361 N.L.R.B. No. 154 (2014).

The validity of an agency's interpretation of a congressional act the agency is charged to administer is reviewed by a Court under the familiar two-step test set out in <u>Chevron</u>. <u>See</u> <u>Montgomery Cty., Md. v. F.C.C.</u>, 811 F.3d 121, 2015 WL 9261375, at *6 (4th Cir. Dec. 18, 2015) ("Here, a <u>Chevron</u> analysis is appropriate because the issue before us involves the FCC's interpretation of a statute it is charged with administering."). At step one, the Court determines "whether Congress has directly spoken to the precise question at issue." <u>Chevron</u>, 467 U.S. at 842. Here, that would mean if Congress has plainly addressed whether Regional Directors may continue to act in the absence of a Board quorum, "that is the end of the matter[,] for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Id.</u> at 842-43. However, if the statute is silent or ambiguous, the Court will proceed to <u>Chevron</u>'s second step, which asks whether the Board's interpretation is "a permissible construction of the

---

States v. Fareed, 296 F.3d 243, 246 (4th Cir. 2002) (following "dictum endorsed by six justices" of the Supreme Court). Because the <u>Chevron</u> deference argument resolves this issue, we do not specifically address the effect of <u>New Process Steel</u>.

statute." <u>Id.</u> at 843. If it is, then we must defer. <u>Id.</u> at 844; <u>see also</u> <u>City of Arlington v. FCC</u>, 133 S. Ct. 1863, 1870-71 (2013).

Beginning with the first step of the <u>Chevron</u> analysis, whether the statute speaks directly and unambiguously to the Regional Director's authority during the absence of a Board quorum, we examine the relevant statutory text:

> The Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise. The Board is also authorized to delegate to its regional directors its powers under section 159 of this title to determine the unit appropriate for the purpose of collective bargaining, to investigate and provide for hearings, and determine whether a question of representation exists, and to direct an election or take a secret ballot under subsection (c) or (e) of section 159 of this title and certify the results thereof, except that upon the filing of a request therefor with the Board by any interested person, the Board may review any action of a regional director delegated to him under this paragraph, but such a review shall not, unless specifically ordered by the Board, operate as a stay of any action taken by the regional director. A vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board, and three members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group designated pursuant to the first sentence hereof. . . .

29 U.S.C. § 153(b). Nothing in the statute addresses the effect of the Board's loss of quorum on a prior delegation of authority to Regional Directors. <u>See</u> <u>Id.</u> As Congress has not plainly addressed the issue, we must engage in the second part of the

16

Chevron analysis: whether the Board's interpretation that the delegation of authority to Regional Directors survives despite the absence of a Board quorum is a reasonable one to which we owe deference.

Relying on the express statutory authorization in Section 3(b) of the Act, the Board delegated decisional authority in representation proceedings to Regional Directors in 1961. 26 Fed. Reg. 3911 (May 4, 1961). At the time of this delegation to the Regional Directors, the Board had sufficient members to meet the Board quorum requirement. 26 NLRB Ann. Rep. 1 (1962). The Board has never rescinded that delegation.

Although the Board lacked a quorum at the time the Regional Director conducted the elections at issue here, "[t]he policy of the National Labor Relations Board is that during any period when the Board lacks a quorum normal Agency operations should continue to the greatest extent permitted by law." 29 C.F.R. § 102.178; see also id. § 102.182 ("During any period when the Board lacks a quorum, . . . [t]o the extent practicable, all representation cases should continue to be processed and the appropriate certification should be issued by the Regional Director[.]").

Only one other Circuit Court of Appeals, the District of Columbia Circuit, has addressed this precise issue of whether the Board's interpretation of the Act, which delegated authority

17

to Regional Directors remains intact during the absence of a Board quorum, is reasonable and entitled to Chevron deference. UC Health, 803 F.3d 669; SSC Mystic Operating Co. v. NLRB, 801 F.3d 302 (D.C. Cir. 2015). The D.C. Circuit has now twice held that the Board's interpretation "easily" satisfies the standard of being "reasonable and consistent with the statute's purpose." UC Health, 803 F.3d at 675; SSC Mystic Operating Co., 801 F.3d at 309 (concluding the Regional Director's authority to conduct the representation election was "beyond dispute"). In UC Health, the court explained its conclusion as follows:

> This is a sensible interpretation that is in no way contrary to the text, structure, or purpose of the statute. . . . Moreover, allowing the Regional Director to continue to operate regardless of the Board's quorum is fully in line with the policy behind Congress's decision to allow for the delegation in the first place. Congress explained that the amendment to the [Act] that permitted the Board to delegate authority to the Regional Directors was "designed to expedite final disposition of cases by the Board." See 105 Cong. Rec. 19,770 (1959) (statement of Sen. Barry Goldwater). Permitting Regional Directors to continue overseeing elections and certifying the results while waiting for new Board members to be confirmed allows representation elections to proceed and tees up potential objections for the Board, which can then exercise the power the [Act] preserves for it to review the Regional Director's decisions once a quorum is restored. And at least those unions and companies that have no objections to the conduct or result of an election can agree to accept its outcome without any Board intervention at all. The Board's interpretation thus avoids unnecessarily halting representation elections any time a quorum lapses due to gridlock elsewhere.

18

Id. at 675-76. We find the reasoning in UC Health persuasive and agree that the Board's interpretation is "imminently reasonable." Id. at 676.

The Hospitals attempt to distinguish UC Health on its facts, as those parties entered into a Stipulated Election Agreement whereby the Board retained plenary power to review the outcome of the representation proceedings. See 29 C.F.R. § 102.62(b) (describing "stipulated election agreements"). The parties in this case signed Consent Election Agreements, which vested in the Regional Director final authority to oversee the representation elections and certify their results, and it foreclosed Board review over representation proceedings. See Id. § 102.62(a) (describing "Consent Election Agreement"). This distinction makes no difference, as we simply apply the contract terms of the Agreements.

Agreement by contract is among the ways to relinquish the right to plenary Board review and confer on the Regional Director final authority over representation proceedings. UC Health, 803 F.3d at 680 ("Only the acquiescence of the parties or the Board's ratification can give binding force to a Regional Director's determination."). This is a matter of contract law, not administrative law. NLRB v. MEMC Elec. Materials, Inc., 363 F.3d 705, 709 (8th Cir. 2004) (stating the Board was "on sound ground in emphasizing that parties are bound by an approved

19

election agreement, just as they are bound by other contracts"). "When asked to approve election agreements, the Board's long-standing approach has been to honor the parties' freedom of contract, unless their contract is contrary to the statute or Board policy." Id. By signing the Agreements, the Hospitals signed a contract in which they agreed to give up Board review and to vest the Regional Director with authority to issue final decisions at the representation phase. The Hospitals are bound by that contract just as they are bound by other contracts.

Accordingly, we give deference to the Board's interpretation and conclude that the Regional Director's authority to act was not abrogated during the period when the Board lacked a quorum.[7]

---

[7] Although we acknowledge the recent decision of the D.C. Circuit in Hosp. of Barstow, Inc. v. N.L.R.B., No. 14-1167, 2016 WL 1720366 (D.C. Cir. Apr. 29, 2016), we find it inapposite here for two distinct reasons. First, no petition for review was filed in this case. See 29 U.S.C. § 160(f) (requiring a petition for review to be in writing and filed with the Court). Second, in Hospital of Barstow, the Board did not offer an interpretation of the statutory quorum provision that would raise Chevron deference on appeal, concluding only "that the challenge to the Regional Director's authority had been waived." Id. at *3. In this case, however, the Board argued waiver and provided an interpretation of the statute whereby the Regional Director could act in the absence of a Board quorum. For the reasons discussed, we owe that interpretation Chevron deference.

The Hospitals also urge the Court to hold that the Regional Director was not validly appointed because the Acting General Counsel, Lafe Solomon, was without authority to act at the time of Regional Director Harrell's appointment. Citing Section 3(d) of the Act, the Hospitals contend Solomon was a temporary appointee to his position and that his authority had lapsed under the statute at the time the Regional Director was appointed. See 29 U.S.C. § 153(d) (limiting temporary appointment to "forty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate"). We do not find this argument persuasive because it is the Board, not the General Counsel, which has final authority to appoint a Regional Director. And the Board did, in fact, approve Harrell as the Regional Director.

The Act provides that "[t]he Board shall appoint . . . regional directors." 29 U.S.C. § 154(a); see also 29 C.F.R. § 102.5 ("The term regional director as used herein shall mean the agent designated by the Board as the regional director for a particular region[.]"). The General Counsel is vested by the Act with "general supervision" over employees in the regional offices. 29 U.S.C. § 153(d). The Board has implemented rules and regulations delegating certain appointive responsibilities

21

to the General Counsel, but as to Regional Directors a designation by the General Counsel is valid "only upon approval of the Board." 67 Fed. Reg. 62992-93 (Oct. 1, 2002); see also 24 Fed. Reg. 6666-67 (Aug. 15, 1959). In other words, the Board must ratify the Regional Director's appointment and any "appointment" by the General Counsel is of no effect until the Board acts. For that reason, even if we assume Solomon's appointment as Acting General Counsel had lapsed at the time of the Regional Director's appointment, it makes no difference. It is the Board -- not the General Counsel -- that retains final authority over the appointment of a Regional Director, and the Board approved the appointment of the Regional Director in this case. Accordingly, the Hospitals' argument fails.[8]

---

[8] Before the Board, the Hospitals also argued the Acting General Counsel "lacked the authority to prosecute the consolidated complaint." Bluefield Hosp., 361 N.L.R.B. No. at 2 n.5. The Board rejected this argument, and the Hospitals do not raise this issue on appeal, a point they confirmed at oral argument. Oral Argument at 18:05-18:15. Although we are fully cognizant of the decisions in SW General, Inc. v. NLRB, 796 F.3d 67, 83 (D.C. Cir. 2015), and Hooks v. Kitsap Tenant Support Services, Inc., No. 13-35912, 2016 WL 860335 (9th Cir. Mar. 7, 2016), the Hospitals have waived any argument in that regard. Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 604 n.4 (4th Cir. 2010) (concluding that an argument not raised in the opening brief is waived); see also SW General, 796 F.3d at 83 ("We address the [Federal Vacancies Reform Act ("FVRA")] objection in this case because the petitioner raised the issue. . . . We doubt that an employer that failed to timely raise an FVRA objection -- regardless of whether enforcement proceedings are ongoing or concluded -- will enjoy the same success.").

D.

The Hospitals also contend that the Board appointed the Regional Director after the Board lost a quorum and consequently, the appointment was invalid. This is a factual dispute; either the Board acted to appoint the Regional Director before it lost a quorum or it didn't. In resolving such a factual dispute, "[t]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e).

The Board determined that the Regional Director's appointment became final on December 22, 2011, approximately one week before the Board lost its quorum. Bluefield Hosp., 361 N.L.R.B. No. at 2 n.5. That factual finding is supported in the record by a document entitled "Minute of Board Action" of December 22, 2011, which states that the Board "unanimously approved" the selection of Claude Harrell as Regional Director for Region 10 by votes taken December 21 and 22, 2011. Board's Response Br., Attach. A. The "Minute of Board Action" settles the issue, as it is substantial evidence. We are bound on appeal by that finding and thus find no merit in the Hospitals' argument.

E.

Having resolved the issues related to the authority of the Board or the Regional Director to act, we turn to the merits.

Section 8(a)(1) of the Act makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of [their rights under the Act]," while Section 8(a)(5) makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(1), (5). The Hospitals admit they refused to bargain with the Union, but contend that the Board erred in its decision to uphold the results of the representation elections because the Regional Director should not have overruled their objections to the election results on procedural grounds.

"'Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees.'" NLRB v. Md. Ambulance Servs., Inc., 192 F.3d 430, 433 (4th Cir. 1999) (quoting NLRB v. A.J. Tower Co., 329 U.S. 324, 330 (1946)); see also NLRB v. Waterman Steamship Corp., 309 U.S. 206, 226 (1940) ("The control of the election proceeding, and the determination of the steps necessary to conduct [an] election fairly were matters which Congress entrusted to the Board alone."). "The results of a

24

Board-supervised representation election are presumptively valid," NLRB v. Flambeau Airmold Corp., 178 F.3d 705, 707 (4th Cir. 1999), and we will overturn a representation election only where the Board has clearly abused its discretion, Elizabethtown Gas Co. v. NLRB, 212 F.3d 257, 262 (4th Cir. 2000).

The applicable regulations governing post-election objections instruct parties to file election objections "[w]ithin 7 days after the tally of ballots has been prepared" and "[w]ithin 7 days after the filing of objections, or such additional time as the Regional Director may allow, the party filing objections shall furnish to the Regional Director the evidence available to it to support the objections." 29 C.F.R. § 102.69(a)(emphasis added). The NLRB's "casehandling manual" provides: "Absent the timely receipt of sufficient evidence, the Regional Director should overrule the objections without any further processing." Nat'l Labor Relations Bd., Casehandling Manual (Part 2, Representation Proceedings) § 11392.6 (2014).

The Hospitals admit they were aware that their supporting evidence for the filed objections was to be submitted in the respective cases no later than September 12 and 13, 2012. They further admit that they declined to submit any evidence and made no request for an extension of time to submit evidence. The regional director overruled their objections on September 24, well after the 7-day deadline had passed. "[I]t is not

25

sufficient for an employer merely to question the interpretation of or legal conclusions drawn from the facts by the Regional Director." Nat'l Posters, Inc. v. NLRB, 720 F.2d 1358, 1362 (4th Cir. 1983). "To be entitled to a hearing, the objecting party must make a proffer of evidence which prima facie would warrant setting aside the election." NLRB v. Hydrotherm, Inc., 824 F.2d 332, 335 (4th Cir. 1987) (internal quotation marks omitted). The Regional Director was well within his authority to overrule the objections and rescind the hearings notices, and indeed the Board's rules directed him to do so in this circumstance.

The Hospitals counter that they were not obligated to submit evidence in support of their objections because they had an oral agreement with the Union to submit the matter to an arbitrator. However, the Board has since explained that it consistently rejects employers' claims of "an oral ad hoc agreement between the parties g[iving] exclusive jurisdiction to an arbitrator." D.H.S.C., LLC, 362 N.L.R.B. No. 78, at *1 n.3 (Apr. 30, 2015) (noting the Board had rejected an identical argument several times before and warning that continuing to press the "nonmeritorious" argument could result in disciplinary proceedings). To the extent the Hospitals now claim this oral agreement was reduced to writing at some point, it is not in the

record.  See 9 U.S.C. § 2 (requiring agreements to arbitrate to be in writing under the Federal Arbitration Act).

We therefore conclude the Hospitals' sole challenge to the merits of the Board's final decision to be baseless.

## III.

For the reasons set out above, we grant the Board's application for enforcement of its order.

APPLICATION FOR ENFORCEMENT GRANTED